1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL WELDON,<br><br>                              Plaintiff,<br><br>        v.<br><br>JOHN CONLEE, POLICE OFFICER,<br>FRESNO POLICE DEPARTMENT;<br>ECONO TOWING; MARTY KODMAN,<br>OWNER, ECONO TOWING; ROBERT<br>KODMAN, OWNER, ECONO TOWING;<br>AND BERYLE DODSON, EMPLOYEE,<br>ECONO TOWING,<br><br>                              Defendants. | Case No. 1:13-CV-00540-LJO-SAB<br><br>JURY TRIAL JUNE 24, 2015<br><br>ORDER GRANTING DEFENDANTS' AND<br>DENYING PLAINTIFF'S MOTIONS FOR<br>SUMMARY JUDGMENT, AND<br>DISMISSING AS MOOT PLAINTIFF'S<br>MOTIONS TO STAY AND FOR<br>RECONSIDERATION.<br><br>(Doc. Nos. 96, 97, 132, 133, 135, 138, 139,<br>141, 143, 145) |

        Before the Court in the above-styled and numbered cause of action are "Defendants Robert

Kodman and Marty Kodman, Individually and DBA Econo Towing, Econo Towing and Beryle

Dodson's Motion for Summary Judgment," filed February 18, 2015 (Doc. 96), Defendant John

Conlee's Motion for Summary Judgment, filed February 18, 2015 (Doc. 97), and Plaintiff Paul

Weldon's Motion for Summary Judgment, filed on April 9, 2015 (Doc. 139).  The Court concludes

that the matters are appropriate for determination without oral argument. *See* Local Rule 230(g).

The Court, having considered the record in this case, the parties' briefing, and the relevant law, will

grant Defendants' motions for summary judgment, deny Plaintiff's motion for summary judgment,

and will dismiss as moot Plaintiff's pending motions to stay and for reconsideration.

1

1

**BACKGROUND**

2

Plaintiff Paul Weldon's ("Plaintiff" or "Weldon") claims arise from an incident during a

3

traffic stop on April 18, 2011.  Weldon alleges that he was driving a van when he was pulled over

4

by Defendant City of Fresno Police Officer John Conlee ("Conlee"), who, according to Weldon,

5

was impersonating a police officer.  During the traffic stop, Weldon alleges that Conlee was rude to

6

him, ordered him out of the van, and assaulted him by twisting his arms behind his back to handcuff

7

him.  Weldon also alleges that, although the van was properly registered, Conlee ripped the

8

registration tab off of the license plate and called Econo Towing Company and its employee tow-

9

truck driver ("the Towing Defendants") to tow the car.  The Court has construed Weldon's Fourth

10

Amended Complaint as asserting claims under Section 1983 for unreasonable search and seizure in

11

violation of the Fourth Amendment, the use of excessive force in violation of the Fourth

12

Amendment, a due process claim in violation of the Fifth and Fourteenth Amendments, and state

13

law claims for conversion and assault and battery.

14

**A. Defendants' Facts**

15

***Officer Conlee's Account***

16

On April 18, 2011, Officer Conlee was on duty, in uniform, and operating a marked police

17

vehicle in the area of Parkway and Belmont avenues in Fresno, California. *See* City Defendants'

18

Separate Statement of Undisputed Material Facts ("SSUMF," Doc. 97-6), ¶ 7.  Conlee observed

19

Plaintiff's vehicle driving at what he estimated was a speed of 55 miles per hour in a 40 mile-per-

20

hour speed zone. SSUMF ¶ 8.  Conlee used a hand-held radar device which clocked Plaintiff's

21

speed at 58 miles per hour. *Id.* ¶ 9. Conlee initiated a vehicle stop for the purpose of issuing a traffic

22

citation for Plaintiff's speeding, a violation of California Vehicle Code section 22350 (speeding).

23

*Id.* ¶ 10.  Plaintiff pulled into the private property of an Econo Lodge parking lot at 445 N Parkway

24

Drive. *Id.* ¶ 11.  When approached by Officer Conlee, Plaintiff identified himself as "Doug

25

Weldon" and stated he did not have identification on him. *Id.* ¶ 12.  Conlee ran Plaintiff's name

26

through the Record Management System and was unable to locate a driver's license or

27

identification information for the name, "Doug Weldon."  Conlee concluded that Plaintiff was

28

2

driving without a license in violation of Vehicle Code section 12500(a), and for all of these reasons placed Plaintiff under arrest. *Id.* ¶ 13.

While conducting a search incident to arrest, Conlee located a wallet in Plaintiff's pocket which contained an expired driver's license issued to "Paul Douglas Weldon." *Id.* ¶ 14.  Conlee ran the expired license through dispatch and discovered Plaintiff had a suspended license. *Id.* ¶ 15. Based on Conlee's training and experience, he concluded Plaintiff was operating his vehicle on a public roadway knowing his driver's license was suspended, an arrestable offense in violation of Vehicle Code section 14601.1(A). *Id.* ¶ 16.  Because of Plaintiff's suspended license, combined with the fact that Econo Lodge was a private parking lot situated in a high-crime area, making it an easy target for vandalism or theft, Conlee requested the vehicle be impounded.  A tow-truck driver from Econo Towing arrived minutes later and towed Plaintiff's vehicle off the premises. *Id.* ¶ 17.

### The Towing Defendants' Account

Econo Towing received a request from Officer Conlee that they tow an impounded vehicle. *See* Econo Towing Defendants' Separate Statement of Undisputed Material Facts ("ET-SSUMF," Doc. 96-1), ¶ 7.  Econo Towing dispatched its employee, tow-truck driver Beryle Dodson. ET-SSUMF ¶ 8.  Upon arrival, Officer Conlee, a uniformed police officer at the scene, gave Dodson a Fresno Police Department Vehicle Inventory Report. *Id.* ¶ 9.  Dodson reviewed the report and executed it. *Id.* ¶ 9. After Dodson executed the Inventory Report, Officer Conlee gave him the keys to the Dodge Caravan in order to facilitate the tow. *Id.* ¶ 8 & 10.  Dodson was familiar with the procedure because it was the same procedure that he knew from previous Fresno Police impound tows, and the circumstances and procedures appeared appropriate and consistent with those known towing procedures for the Fresno Police Department. *Id.* ¶ 8 & 10.  Dodson had no contact with Weldon; he neither saw nor spoke with Weldon at any point during the towing activity. *Id.* ¶ 12. All of the towing activity at the scene took place in the presence and under the supervision of Officer Conlee.  In order for Conlee to inform Weldon about the vehicle's storage location, Dodson gave Conlee his Econo Towing business card, which included the location of the impound yard.  At all times, Dodson believed that he was following the lawful instruction of Officer Conlee and was

authorized to tow the vehicle and. *Id.* ¶ 13.  Weldon's vehicle did not incur any damage from the towing and storage activity. *Id.* ¶ 14.

Econo Towing is not allowed to release an impounded vehicle to its owner without an executed release form from the impounding law enforcement agency. *Id.* ¶ 15.  On the same day as the incident, at approximately 12:58 p.m., Leah Holler ("Holler"), the office manager at Econo Towing, received from the City of Fresno Police Department, via facsimile, the Vehicle Administrative Release form for Weldon's vehicle. *Id.* ¶ 16.  Within approximately one hour after receiving the release form from the police department, Weldon and Lowell Dean Weldon presented themselves at Econo Towing's impound yard to recover Weldon's vehicle. *Id.* ¶ 17.  Each presented their identification cards, which Holler photocopied. *Id.*  Weldon paid the towing and storage charges, totaling $175.00, and Lowell Dean Weldon drove the vehicle off the lot. *Id.* ¶ 18.

### B.  Plaintiff's Facts[1]

Plaintiff Weldon alleges that he was driving down Belmont Avenue in Fresno, California on April 18, 2011 in a properly registered vehicle, a van, when he was pulled over by an employee of the Fresno Police Department driving a motorcycle. FAC ¶ 11.  The man approached Plaintiff's driver-side window and identified himself as John Conlee, a Fresno Police Officer. *Id.* ¶ 12. Plaintiff asserts that Conlee was unlawfully impersonating a police officer because he never took an oath of office that comports with the minimum requirements of the United States or California constitutions. *Id.* ¶ 13.  During his interaction with Plaintiff, Conlee used a harsh and belligerent tone. *Id.* ¶ 14.  Plaintiff did not know why he had been pulled over by Conlee. *Id.* ¶ 14.  Conlee informed Plaintiff that he was speeding. *Id.* ¶ 14.

Plaintiff did not like Conlee's belligerent attitude. *Id.* ¶ 15.  Plaintiff told Conlee that they should immediately go before a magistrate so that the matter might be resolved in a respectful manner, which seemed to infuriate Conlee. *Id.*  Conlee then reached into Plaintiff's van, snatched the keys out of the ignition, and became more belligerent. *Id.*  During the interaction, Plaintiff received a phone call on his cellular phone from his legal counsel. *Id.* ¶ 16.  Plaintiff took the call

---

[1] The Court takes the factual background from the facts as alleged in Plaintiffs' Complaint (Doc. 77), unless otherwise noted.  For the purposes of summary judgment, the Court resolves factual disputes in favor of the nonmoving party.

and asked the caller to wait so he could "deal with" Conlee. *Id.*  Plaintiff placed his phone on the dashboard. *Id.*  Conlee seemed concerned that the incident was being recorded. *Id.*  Conlee snatched the phone, closed the cover, and tossed it back into the vehicle. *Id.*  This seemed to further infuriate Conlee. *Id.*

Conlee ordered Plaintiff to get out of the van in a threatening tone. *Id.* ¶ 17.  Plaintiff complied. *Id.*  Upon Plaintiff's exit from the van, Conlee grabbed Plaintiff by his wrists, twisted his arms in a violent fashion as to bring Plaintiff's arms behind his back. *Id.* ¶ 18.  The movement was "brutish" and caused Plaintiff pain in the joints, rotator sockets, elbows, and wrists. *Id.*  Upon "wresting" Plaintiff's arms behind him, Conlee clenched Plaintiff's fingers together with great force, enough to cause him pain which lasted several hours. *Id.* ¶ 19.  Conlee hurried to handcuff Plaintiff, and clamped them on "as tightly as possible." *Id.* ¶ 20.  As a result of the tight handcuffs, Plaintiff experienced "considerable pain and numbness which lasted for several hours." *Id.*  Plaintiff does not allege that he complained to Conlee about the handcuffs.  Once Plaintiff was in handcuffs, Conlee proceeded to remove the contents of Plaintiff's pockets, including a pager clipped onto his pocket. *Id.* ¶ 21.  While doing so, Conlee dropped the pager on the asphalt and it broke, irreparably. *Id.*  Conlee took Plaintiff to the rear of the van "so that Weldon might observe him ripping off the valid tab from the rear license plate of Weldon's van." *Id.* ¶ 22.

Conlee next called a towing company, Econo Towing, to take Plaintiff's van away from the private property where the incident took place. *Id.* ¶ 23.  Plaintiff contends that this was unlawful because no Defendant had a warrant from a court of competent jurisdiction that authorized any of the Defendants to lawfully remove his vehicle from the private property. *Id.* ¶ 25.  The tow truck operator who arrived was Beryle Dodson. *Id.* ¶ 24.  Dodson acted "at the behest of the other defendants in this action," when he removed Plaintiff's van from private property without the approval from Plaintiff or the private property owner. *Id.* ¶ 26.  Also, Dodson trespassed on private property. *Id.*

After the tow truck left, Conlee removed Plaintiff's handcuffs and left him stranded. *Id.* ¶ 27.  Plaintiff was emotionally distressed. *Id.*  Plaintiff's cellular phone was undamaged, so Plaintiff

called someone to pick him up and drive him home. *Id.* He waited approximately 40 minutes along the street. *Id.*

Plaintiff does not address the validity of his arrest, his suspended license, or the officer's account of his giving a false name to identify himself.

### C. Procedural History

Plaintiff commenced this action, *pro se*, by filing his original complaint with this Court on April 15, 2013. (Doc. 1). Plaintiff names Econo Towing Company, Robert Kodman and Marty Kodman, individual owner operators of Econo Towing Company, and Beryle Dodson, an individual tow truck operator for Econo Towing Company, as defendants in this action ("the Towing Defendants"), as well as Jerry Dyer, Chief of the Fresno Police Department, and Officer John Conlee, a City of Fresno police officer ("the City Defendants") (collectively, "Defendants"). *See* FAC (Doc. 77). On April 19, 2013, the Magistrate Judge screened the complaint, and, finding that Plaintiff stated some cognizable claims, required Plaintiff to either inform the Court whether he wished to proceed only as to the cognizable claims, or file an amended complaint curing the deficiencies. (Doc. 4). On May 14, 2013, Plaintiff filed his First Amended Complaint ("the Amended Complaint," Doc. 5). On May 21, 2013, the Magistrate Judge screened the Amended Complaint, finding that it failed to state any cognizable claims, therefore dismissing it with leave to amend. (Doc. 7.)

On June 19, 2013, Plaintiff filed his Second Amended Complaint ("SAC," Doc. 10). The Magistrate Judge again screened the SAC, finding that it stated some cognizable claims, but recommended that claims against Defendant Jerry Dyer and Plaintiff's claims under 42 U.S.C. § 1986 be dismissed with prejudice and that the action proceed only as to the claims against Defendants John Conlee, Econo Towing and Doe Defendants Nos. 1-3. Acknowledging Plaintiff's statement of nonopposition (Doc. 13), this Court adopted in full the Magistrate Judge's Findings and Recommendations in its Order rendered July 9, 2013. (Doc. 14).

On January 27, 2014, Plaintiff filed multiple motions for entry of default against Defendants (Docs. 30-33), which the Magistrate Judge denied on February 4, 2014. (Doc. 34).

6

On March 17, 2014, Plaintiff filed a motion for leave to amend his complaint in order to substitute the Doe Defendants (Doc. 35), and lodged the Third Amended Complaint ("TAC," Doc. 36). For that limited purpose, the Magistrate Judge granted leave to amend. (Doc. 37).

In May 2014, the Defendants filed consents to jurisdiction of a United States Magistrate Judge (Docs. 47 & 48), but Plaintiff declined (Doc. 51). This Court referred subsequent pretrial motions to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 304.

On April 24, 2014, the Towing Defendants filed a Motion to Dismiss Plaintiff's Complaint (Doc. 44), which this Court referred to the Magistrate Judge (Doc. 45). On May 19, 2014, Plaintiff filed his opposition to the motion to dismiss (Doc. 50), and a "Motion for Leave to File Brief in Opposition to 'Defendants [ . . .] Motion to Dismiss Complaint, or Alternatively, Motion for More Definite Statement' Out of Time" (Doc. 49).

On June 4, 2014, Plaintiff failed to appear at the motion hearing on Defendants' motion to dismiss (Doc. 52). As a result, the Magistrate Judge took the motion under submission without oral argument, and issued an order to show cause why sanctions should not issue for Plaintiff's failure to appear. (Doc. 55). Because Plaintiff had been given explicit notice about the hearing, the Magistrate Judge did not accept Plaintiff's excuse that he was unaware that his attendance was required. (Doc. 72). The Court admonished Plaintiff to comply with the Local Rules but did not issue monetary sanctions because Defendant failed to provide evidence of the costs and fees associated with their appearance at the motion hearing. *Id.* The Magistrate Judge also denied Plaintiff's motion relative to "a more definite statement out of time." (Doc. 53). Also on June 4, 2014, the Magistrate rendered his Findings and Recommendations (Doc. 54), in which he recommended to this Court that Defendants' motion to dismiss be denied, which this Court adopted in full on July 9, 2014 (Doc. 73).

On June 12, 2014, the Court rendered an order consolidating the instant action with Case No. 1:14-CV-00549 (Doc. 56). In light of the consolidation, Plaintiff requested leave to amend the TAC (Doc. 68), which, on July 30, 2014, the Magistrate Judge granted (Doc. 76).

On September 2, 2014, Plaintiff filed the operative Fourth Amended Complaint ("FAC," Doc. 77). On September 19, 2014, the City Defendants filed a motion to strike portions of

Plaintiff's FAC (Doc. 79).  On October 24, 2014, the Magistrate Judge recommended denying the City Defendants' motion (Doc. 86), and this Court, on December 4, 2014, adopted in full the Magistrate Judge's findings and recommendations (Doc. 87).

On October 9, 2014, Plaintiff filed a motion for a protective order regarding a videotaped deposition of Plaintiff noticed by Defendants (Doc. 83).  On October 10, 2014, the Magistrate Judge denied the motion (Doc. 84), without oral argument or further briefing, reasoning that Plaintiff's motion was frivolous for at least two reasons: first, that the basis for Plaintiff's motion was his subjective opinion that he should not have to participate in his deposition because he found it to be inconvenient and harassing; and, because Plaintiff's argument that his deposition served no purpose was nonsensical in circumstances where Plaintiff is obviously a percipient witness of the events alleged in his own complaint.  The Magistrate Judge explicitly warned Plaintiff that he "must abide by the same rules and procedures that Defendants must abide by according to the Federal Rules of Civil Procedure, including those rules and procedures governing depositions and other discovery requests." (Doc. 80, Order Denying Mot. for Protective Order 2:3-5.)

On January 20, 2015, the City Defendants filed a motion to conduct a mental examination of Plaintiff pursuant to Federal Rule of Civil Procedure 35. (Doc. 88).  Initially scheduled to be heard on March 11, 2015, it was continued to March 25, 2015 (Doc. 104).  On February 17, 2015, Plaintiff filed a motion for protective order regarding a mental examination (Doc. 95).  Plaintiff filed several discovery responses on January 26, 2015 (Docs. 89-91), which the Magistrate rightly disregarded on January 28, 2015 (Doc. 92).

On February 2, 2015, the City Defendants filed a motion to compel Plaintiff to provide responses to certain questions he refused to answer during his deposition (Doc. 93).  The Magistrate Judge observed that the deposition transcript illustrates that Plaintiff's conduct during the deposition was rude, uncooperative, disrespectful, and simply unacceptable.  After arriving twenty minutes late to his own deposition, Plaintiff initially refused to submit to the deposition until the City Defendant's attorney, Ms. Camarena, satisfied Plaintiff's groundless demands that she prove that she was licensed to practice law and qualified to administer oaths.  Not until counsel warned Plaintiff about a future motion to compel and further sanctions did Plaintiff allow Ms. Camarena to

ask questions.  However, Plaintiff refused to answer numerous obviously relevant questions, arguing that they were not relevant.  Finally, Plaintiff accused Ms. Camarena of "rape, a molest, and a torture" because she asked him questions which displeased him.  Plaintiff behaved in this uncooperative, offensive, and unacceptable manner despite the Magistrate Judge's October 10, 2014 Order, in which he expressly rejected Plaintiff's claims that a deposition was unduly inconvenient and harassing, and had explicitly ordered Plaintiff to comply with Federal Rules, including those about depositions and discovery.

Because the Court scheduled a hearing on the City Defendant's motion to compel for March 11, 2015, in accordance with Local Rule 251, the parties were required to file a Joint Statement regarding the discovery dispute by March 4, 2015.  Instead, on March 4, 2015, the City Defendants filed a statement in which they informed the Court that Plaintiff failed to participate in drafting a joint statement (Doc. 102).  On March 6, 2015, the Magistrate Judge rendered an order granting the City Defendant's motion to compel and ordered Plaintiff to show cause why sanctions should not issue for Plaintiff's refusal to participate in the preparation of a Joint Statement (Doc. 103).  In the same Order, the Magistrate Judge ordered Plaintiff to pay $715.00 in monetary sanctions for his behavior at the previous deposition, and to schedule and cooperate with Defendant at a new deposition.  On March 20, 2015, Plaintiff filed a written response to the order to show cause (Doc. 120).

The parties were also required to submit by March 18, 2015, a Joint Statement related to the City Defendant's January 20, 2015 motion for a mental examination.  Instead, on March 18, 2015, Defendant Conlee filed a statement informing the Court that, again, Plaintiff failed to participate in the preparation of a joint statement (Doc. 115).  On March 20, 2015, the Magistrate Judge granted Defendant's motion for a mental examination and ordered Plaintiff to show cause why sanctions should not be imposed for his second failure to participate in the preparation of a Joint Statement (Doc. 116).  On April 3, 2015, Plaintiff filed his response (Doc. 135) to the Court's March 20, 2015 order to show cause, in which he argued that he had complied with the Joint Statement requirement by providing "Exhibit A" that was attached to Plaintiff's response to the March 6 order to show cause, which the Magistrate Judge has reviewed and found to be not only insufficient, but a

falsehood.

Because Plaintiff's FAC (Doc. 77) asserts claims which the Court had previously dismissed with prejudice, the City Defendants requested *nunc pro tunc* relief (Doc. 94).  On March 18, 2015, this Court granted relief and specifically acknowledged its July 9, 2013 Order (Doc. 14) dismissing all of Plaintiff's claims against Dyer, as well as all of Plaintiff's claims under section 1986, without leave to amend.  The Court warned Plaintiff, yet again, that failure to follow the Court's orders could result in sanctions up to and including dismissal of his case in its entirety.

On March 20, 2015, Plaintiff filed a motion to stay discovery, citing the Court's pending resolution of the motion for summary judgment, which the Court disregarded for Plaintiff's failure to comply with Local Rule 230 (Doc. 121).  Plaintiff filed additional improperly noticed motions (Docs. 122, 124, 126), which the Court likewise disregarded (Docs. 130 & 131).

On March 30, 2015 and again on April 10, 2015, Plaintiff filed three duplicative motions: to Stay Discovery Pending Determination of Pending Motions for Summary Judgment (Docs. 132 & 145); to Stay Imposition of $715 Monetary Sanctions Pending Disposition of Motion to Reconsider (Docs. 133 & 143); and for Reconsideration of the Court's previous order continuing the hearing on Defendants' motion to compel Plaintiff to submit to an independent medical examination (Docs. 135 & 141).

On February 18, 2015, Defendants filed their motions for summary judgment (Docs. 96 & 97).  Plaintiff filed his Oppositions to the motions on March 12, 2015 (Docs. 105 & 106). Defendants filed their respective Reply briefs on March 17, 2015 (Docs. 110 & 111).  Plaintiff filed a motion for summary judgment on April 9, 2015 (Doc. 139).  The matters are now ripe for review.

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.  The Court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000).  A fact is "material" if its proof or disproof is essential to an element of a plaintiff's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).  A factual dispute is "genuine" "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (internal citation omitted).

The moving party bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact for trial. *Celotex,* 477 U.S. at 323. If the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(c); *Liberty Lobby,* 477 U.S. at 250.

A verified complaint based on personal knowledge setting forth specific facts admissible in evidence is treated as an opposing affidavit under Rule 56. *Schroeder v. McDonald,* 55 F.3d 454, 460 (9th Cir. 1995). A verified pleading based on personal knowledge in opposition to a summary judgment motion setting forth facts that would be admissible in evidence may also function as an affidavit. *Johnson v. Meltzer,* 134 F.3d 1393, 1399-1400 (9th Cir.), *cert. denied,* 525 U.S. 840 (1998).

**DISCUSSION**

Defendant Officer Conlee and the Towing Defendants argue that summary judgment should be granted in their favor on Weldon's Section 1983 claim because: (1) the Officer and Towing Defendants are not liable on the Section 1983 claims as there was no constitutional violation and Plaintiff has otherwise failed to present evidence sufficient to persuade a reasonable trier of fact that such Defendants are liable for such claims; (2) Officer Conlee is exempt from suit on Weldon's Section 1983 claim for unreasonable seizure under the community caretaker doctrine; (3) the Towing Defendants contend that summary judgment should be granted in their favor on Plaintiff's Section 1983 claim because they are entitled to a "good faith" defense; (4) Plaintiff cannot plead a cognizable due process claim; (5) the Officer is not liable on the excessive force claim as there was no constitutional violation and Plaintiff does not meet his burden of showing that genuine issues of

material fact remain for trial; and, (6) Officer Conlee is entitled to qualified immunity as to the excessive force claim.

The Court acknowledges that it could dismiss this case in its entirety, as the Magistrate Judge recommends, because Plaintiff has repeatedly defied Court orders.  In the absence of genuine issues of material fact, however, the Court finds summary judgment appropriate.

## I.   SECTION 1983 CLAIMS

To succeed in asserting his Section 1983 claims, Weldon must demonstrate that the action (1) occurred "under color of state law," and (2) resulted in the deprivation of a constitutional or federal statutory right. *Leer v. Murphy,* 844 F.2d 628, 632-33 (9th Cir. 1988) (citations omitted).

As the moving party, Defendants bear the initial burden on summary judgment of pointing out "an absence of evidence to support [Plaintiff's] case." *Celotex,* 477 U.S. at 325.  The parties do not dispute that Defendants acted under color of state law, but dispute whether Defendants violated Weldon's constitutional rights.

### A.  Fourth Amendment Claims

Under the Fourth Amendment, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Florida v. Jimeno,* 500 U.S. 248, 250 (1991) (citations omitted); *see also United States v. Chan-Jimenez,* 125 F.3d 1324, 1326 (9th Cir. 1997) ("For purposes of the Fourth Amendment, a seizure occurs when a law enforcement officer, by means of physical force or show of authority, in some way restrains the liberty of a citizen.").

#### 1.  Unreasonable Seizure

Weldon brings a 42 U.S.C. Section 1983 action against Officer Conlee and the Towing Defendants alleging that such Defendants violated his Fourth Amendment rights by towing his vehicle without a warrant or his permission, and that, as a result, the seizure was unlawful. Defendant Officer Conlee counters that the conduct was constitutional and that the "community caretaking" exception applies.

The impoundment of an automobile is a seizure within the meaning of the Fourth Amendment.  A seizure results if "there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook County,* 506 U.S. 56, 61 (1992).  "A seizure conducted without a warrant is per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.  The burden is on the Government to persuade the district court that a seizure comes under one of a few specifically established exceptions to the warrant requirement." *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005) (quoting *United States v. Hawkins,* 249 F.3d 867, 872 (9th Cir. 2001)) (internal quotation marks and citations omitted).

### *Defendant John Conlee*

Under California law, if an officer discovers that an individual is driving on a suspended license, it is within a police officer's discretion to "immediately arrest" such an individual and "cause the removal and seizure of that vehicle." [2] Cal. Veh. Code § 14602.6(a)(1) (West).  It is also well-settled that under the community caretaker doctrine, once an arrest is made, a law enforcement officer may seize and remove any vehicle which may impede traffic, threaten public safety, or be subject to vandalism. *See e.g. Hallstrom*, 991 F.2d at 1477 n.4 (finding that impoundment of arrestee's car from private parking lot "to protect the car from vandalism or theft" was reasonable under the community caretaking function).

Defendants contend that because it was clear that Weldon, his license suspended, could not lawfully drive the vehicle, Officer Conlee towed the van to a secure storage lot for safekeeping, rather than abandon it in a high-crime neighborhood for an unknown length of time.  On this basis, Defendant Officer Conlee argues that towing Weldon's van was unquestionably reasonable and the

---

[2] California Vehicle Code Section 14602.6(a)(1) states, "Whenever a peace officer determines that a person was driving a vehicle while his or her driving privilege was suspended or revoked, driving a vehicle while his or her driving privilege is restricted pursuant to Section 13352 or 23575 and the vehicle is not equipped with a functioning, certified interlock device, or driving a vehicle without ever having been issued a driver's license, the peace officer may either immediately arrest that person and cause the removal and seizure of that vehicle or, if the vehicle is involved in a traffic collision, cause the removal and seizure of the vehicle without the necessity of arresting the person in accordance with Chapter 10 (commencing with Section 22650) of Division 11. A vehicle so impounded shall be impounded for 30 days."

officer is exempt from suit under the caretaking exception to the Fourth Amendment. *See e.g. Cody v. Dombrowski*, 413 U.S. 433 (1973); *see also Hallstrom v. City of Garden City*, 991 F.2d 1473 (9th Cir 1993). The Towing Defendants also contend that they are entitled to invoke a good faith defense.

The nonmoving party must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324. Here, Weldon asserts that Conlee was impersonating an officer, thus his orders were not lawful commands. Weldon relies on his subjective opinion that, because Conlee had not taken a proper oath of office, he was merely impersonating a police officer at the time of the incident. As a result, the argument goes, Conlee's order to tow the vehicle was not a valid command, but a theft and an unconstitutionally unreasonable seizure. Other than declarations in support of his motions, Weldon gives no competent evidence to support this material fact. Weldon's subjective opinion is insufficient to dispute the evidence that Conlee is, and was at all relevant times, a police officer with the City of Fresno Police Department because a plaintiff cannot create a genuine issue of material fact by mere conclusory assertions unsupported by anything beyond a "scintilla of evidence." *See Liberty Lobby,* 477 U.S. at 252; *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (summary judgment cannot be avoided by relying on conclusory allegations unsupported by factual data). The Court finds that plaintiff has failed to create a genuine issue of material fact that Conlee was not an actual police officer at the time of the incident.

It is undisputed that Officer Conlee had probable cause to make a traffic stop, and that in the course of the lawful traffic stop, Weldon pulled into the Econo Lodge parking lot. FAC ¶¶ 17-20; Fed. R. Civ. P. 56(e) (if the nonmoving party fails to properly support or address a fact, a court may consider the fact undisputed). There is no dispute that at the time of the incident, Officer Conlee found that Weldon had a suspended license, and that he was arrested. *Id.* There is no dispute that incident to that arrest, Econo Towing received a request from Officer Conlee for a tow-truck to respond to the scene of that arrest, and that, in response, they dispatched an employee, Dodson, to that location. *Id.* It is also undisputed that under the supervision of Officer Conlee, Dodson towed Weldon's vehicle to the tow company's impound location.

14

Recitation of the facts nearly serves as the Court's analysis.  In light of the undisputed fact that Weldon did not have a valid license at the time of the incident, Weldon's arguments that the van was properly registered or that he did not consider it a high-crime area, are unpersuasive. Weldon's arrest for a suspended license was an appropriate factor in the officer's calculus to tow the vehicle because Weldon could not lawfully operate the vehicle – in that, or any other neighborhood. *See City of Cornelius*, 429 F.3d at 865 (citing *United States v. Gutierrez*, 995 F.2d 169, 171 (9th Cir. 1993) ("after determining that neither [occupant] possessed a valid driver's license, the officer advised them that they were free to go, but that they could not drive the Cadillac."); *United States v. Rodriguez-Morales*, 929 F.2d 780, 785 (1st Cir. 1991) (because neither occupant held a valid license, "the [officer's] decision not to let the vehicle continue on its journey was quintessentially reasonable.")).  Considering that Weldon had no valid license and could not lawfully drive the vehicle, the Court finds reasonable Officer Conlee's decision to tow the van from a location where Weldon did not live, but had pulled into by happenstance as a result of a traffic stop.  To do otherwise would mean abandoning the vehicle for an unknown period of time in a motel parking lot, which, the officer reasoned, would create a target for theft or vandalism, an acceptable purpose to tow the vehicle under the community caretaker doctrine.

Accordingly, the Court concludes that, under the community caretaker doctrine, Officer Conlee is exempt from suit as to this cause of action.

### *The Towing Defendants*

The Towing Defendants invoke a "good faith" defense. *See, e.g., Clement v. City of Glendale*, 518 F.3d 1090, 1097 (9th Cir. 2008) (private defendants may assert a "good faith" defense to a section 1983 claim) (citing *Richardson v. McKnight,* 521 U.S. 399, 413-14 (1997); *Wyatt v. Cole,* 504 U.S. 158, 169 (1992); *Jensen v. Lane County,* 222 F.3d 570, 580 n. 5 (9th Cir. 2000)).

As the towing company did in *Clement v. City of Glendale*, the Towing Defendants acted at the direction of the police, and had no reason to believe that towing Weldon's van implicated his Fourth Amendment rights. 518 F.3d at 1096-97.  The parties agree – indeed, Weldon emphasizes – that the Towing Defendants acted in response to Officer Conlee's call requesting the tow, that

Dodson, the towing employee, performed the tow "at the behest" of the officer, and that the officer directed the tow activity. *See* FAC ¶ 26.  Defendants contend, and Weldon does not disagree, that the officer presented Dodson with a Fresno Police Department Vehicle Inventory Report and that Dodson and Officer Conlee followed the usual police procedure for impoundments and towing vehicles, and, also, that the tow company received a fax directly from the Fresno Police Department in order to release the vehicle.  Weldon offers no reasonable basis for questioning Defendant Dodson's evidence that he acted in subjective good faith, and no reasonable basis exists in the record for the Court to conclude that the Towing Defendants acted in subjective bad faith.  Based on their good faith belief that they were towing Weldon's vehicles in compliance with a valid order by the Fresno Police Department, and because there is no material dispute about these facts, the Towing Defendants are entitled to invoke the good faith defense.

As there are no genuine issues of material fact underlying these defenses, the Court will grant summary judgment for all Defendants as to these claims.

### 2.  Excessive Force

Weldon asserts that in the process of arresting him, Defendant Officer Conlee pulled his arms behind his back and placed his hands in handcuffs, and did so "brutishly," which the Court construes as an allegation of excessive force and an unreasonable seizure in violation of the Fourth Amendment.  Weldon alleges that in the process of effectuating the arrest, Officer Conlee handcuffed him tightly, causing him pain in several joints and numbness.  Weldon argues that such force was excessive because he was compliant with the officer's command to get out of the car.

Weldon does not address or dispute that Officer Conlee had probable cause to arrest him for operating a vehicle without a license, a violation of California Vehicle Code section 12500(a), and does not dispute that handcuffs are used in the ordinary course of lawful arrests.  If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion. *See* Fed. R. Civ. P. 56(e).

Defendants argue that even using Weldon's facts, Conlee's conduct does not constitute violative conduct but that, even if it did, Officer Conlee is entitled to qualified immunity.

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The protection of qualified immunity applies regardless of whether the government official makes an error that is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation and citation omitted). "The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Id.* at 245.

Because qualified immunity is an affirmative defense, the defendant bears the burden of establishing entitlement to it. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) ("Since qualified immunity is a defense, the burden of pleading it rests with the defendant.").  "The threshold inquiry in a qualified immunity analysis is whether the plaintiff's allegations, if true, establish a constitutional violation." *Wilkins v. City of Oakland*, 350 F.3d 949, 954 (9th Cir. 2003) (citing *Saucier,* 533 U.S. at 201); *see also Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010) (quoting *Pearson*, 555 U.S. at 232).

### Prong One: Whether the Officer's Conduct Was Objectively Reasonable

A claim against law enforcement officers for excessive force is analyzed under the Fourth Amendment's "objective reasonableness" standard. *See Graham v. Connor,* 490 U.S. 386, 388 (1989). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (quotation omitted).

The Fourth Amendment requires police officers making an arrest to use only an amount of force that is objectively reasonable in light of the circumstances facing them. *Tennessee v. Garner,* 471 U.S. 1, 7-8 (1985).  Neither tackling nor punching a suspect to make an arrest necessarily constitutes excessive force. *Graham,* 490 U.S. at 396 (citing *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir. 1973)).  But "even where some force is justified, the amount actually used may be excessive." *Santos v. Gates,* 287 F.3d 846, 853 (9th Cir. 2002).  "The reasonableness of a particular

17

use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the $^{20}/_{20}$ vision of hindsight." *Id.* (*citing Terry v. Ohio,* 392 U.S. 1, 20-22 (1968)).  An excessive force analysis requires evaluating "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*  The absence of probable cause does not grant an individual the right to offer resistance. *See United States v. Span,* 970 F.2d 573, 580 (9th Cir. 1992). An individual's limited right to offer reasonable resistance is only triggered by an officer's bad faith or provocative conduct. *Id.*

The question in all cases is whether the use of force was "objectively reasonable in light of the facts and circumstances confronting" the arresting officer. *Graham,* 490 U.S. at 397 (internal quotation marks omitted).  Notwithstanding Weldon's subjective opinion to the contrary, his own factual allegations underscore his defiant and unpredictable conduct in the time leading up to his arrest.  Weldon admits that Conlee, in uniform, came to his driver side window and identified himself as a City of Fresno Police Officer and was driving a police vehicle, but Weldon argues that he did not believe that Officer Conlee was an actual police officer.  Plaintiff Paul Weldon does not dispute the officer's account that when asked his name he, in an apparent effort to evade detection for driving on a suspended license, lied and said "Doug Weldon."  Weldon does not dispute that when Officer Conlee ran the name "Doug Weldon," through the police Record Management System, no such licensee existed.  With Conlee at his driver's side window, Weldon admits that he demanded an immediate hearing, that he interrupted Officer Conlee and reached inside his van for his cellular phone, ignored the officer, and took the call.  In other words, by Weldon's account, Officer Conlee faced an argumentative and unpredictable individual.  Deferring to Weldon's facts, as it must, his unpredictable behavior makes it unquestionably reasonable to pull such a suspect's arms behind his back, place his hands in handcuffs, and to do so swiftly and without injury.

Defendant Officer Conlee does not dispute the facts as Weldon presents them.  Further, the parties do not disagree about the use of force.  As Weldon alleges, Conlee concedes that he used force to pull Weldon's arms behind his back and to place his hands in handcuffs.  But Conlee argues that to do so was reasonable under the facts and circumstances with which he was

18

confronted, given how Weldon behaved and that handcuffs are a necessary and routine part of effectuating an arrest.  The officer emphasizes that the information he had at the time was that Weldon had committed a criminal act in that he was driving without a license, lied about his name, demanded an immediate hearing, disputed the officer's authenticity, reached back into his vehicle for his cellular phone, ignored the officer and spoke with the caller, and was unpredictable. Although Weldon asserts a subjective conclusion that he was compliant, Weldon does not present any specific facts or competent evidence disputing the officer's account of his suspended license, lies to the officer, reaching for the phone, or unpredictable behavior. Fed. R. Civ. P. 56(e) (a court may consider such facts undisputed).

Police officers need not use the least intrusive means available to them, *see Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994), and here Weldon contends that Officer Conlee did not apply the minimum, but a disproportionate amount of force to arrest Weldon by "wresting" his arms, twisting his arms "in a violent fashion" in order to bring them behind his back, grabbing him by his wrists, and handcuffing him.  However, "[i]f an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed." *Saucier v. Katz*, 533 U.S. 194, 204-05 (2001).  The evidence shows that Conlee did not know who Weldon actually was, and could not have known what Weldon was doing or reaching for inside the vehicle when he went for his cellular phone.  Faced with the unpredictable actions of an argumentative suspect, it is a reasonable conclusion that Weldon was likely to fight back.  The Court finds that under these circumstances, as Weldon describes them, the minimal force Officer Conlee used was reasonable. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921-22 (9th Cir. 2001) (citing *Forrester v. City of San Diego,* 25 F.3d 804, 806-07 (9th Cir. 1994) (finding the use of pain compliance techniques on nonresisting abortion protestors, that resulted in complaints of bruises, a pinched nerve and a broken wrist, was objectively reasonable); *Foster v. Metro. Airports Comm'n,* 914 F.2d 1076, 1082-83 (8th Cir. 1990) (determining resistance justified using force to handcuff a suspect where it was insufficient to create evidence of injury)).

Weldon's allegations of injury are also unsupported.  In some instances, tight handcuffing can constitute excessive force. *See e.g. LaLonde v. Cnty. Of Riverside*, 204 F.3d 947, 960 (9th Cir.

2000).   But that tight handcuffs may constitute excessive force in *some* instances does not mean that it does in *all* instances.   An officer may certainly use handcuffs to effectuate an otherwise lawful arrest without implicating the Fourth Amendment. *See Graham,* 490 U.S. at 396 (1989) (an officer is allowed to use reasonable force during an arrest).   In circumstances analogous to the instant case, courts in this circuit have found that no Fourth Amendment violation occurred where police officers used handcuffs in the ordinary course of an otherwise lawful arrest absent either a showing that an officer ignored the plaintiff-detainee's complaint about tight handcuffs or that handcuffs caused plaintiff's injury, or both. *See e.g. Ressy v. King County*, No. C11-760 MJP, 2012 WL 2155006, at *1 (W.D. Wash. June 13, 2012) *aff'd*, 520 F. App'x 554 (9th Cir. 2013)); *Epling v. Komathy*, 536 F. App'x 755 (9th Cir. 2013).

In *Ressy v. King County*, the Ninth Circuit affirmed the district court's finding that the officer's tightly handcuffing a suspect did not constitute unconstitutionally excessive force because the plaintiff-detainee had apparently not complained to the officer about the handcuffs at the time of the incident. 520 F. App'x 554.  In *Epling v. Komathy*, the Ninth Circuit again held that the district court properly granted summary judgment in the defendant's favor because the plaintiff-detainee neither complained about tight handcuffs at the time of the incident nor showed that she suffered injury related to the handcuffing, and thus failed to raise a genuine dispute of material fact as to whether defendant's use of force in handcuffing her was unreasonable. 536 F. App'x 755 (citing *Graham,* 490 U.S. at 396; *see also Kennedy v. Allied Mut. Ins. Co.,* 952 F.2d 262, 266 (9th Cir. 1991) (a party cannot create dispute of fact by an affidavit contradicting prior deposition testimony); *Arpin,* 261 F.3d at 922 (summary judgment is proper on an excessive force claim arising from application of handcuffs where plaintiff did not provide any medical records to support her claim that she suffered an injury as a result of being handcuffed)).

And in *Luong v. City & County of San Francisco*, despite Luong's complaint about a minor but temporary injury, a district court found no triable issue of fact because the plaintiff-detainee's "only complaint is that his handcuffs were too tight, which left a slight abrasion on his wrists." No. C11-5661 MEJ, 2012 WL 5869561, at *5 (N.D. Cal. Nov. 19, 2012).  The court found that the plaintiff's "only evidence to support his excessive force claim is his testimony that the handcuffs

were too tight and caused him a slight abrasion" and such an allegation was "vague testimony" and "not enough to withstand summary judgment." *Id.* In *Shaw v. City of Redondo Beach*, a district court also granted summary judgment in defendants' favor because the detainee "did not repeatedly request to have the handcuffs removed or loosened, was not in any demonstrable pain, did not complain of pain or inform [the officer] of any pre-existing injuries, and was not pushed or shoved." 2005 WL 6117549, at *9 (C.D. Cal. Aug. 23, 2005).

This Court agrees that a generalized allegation of excessive force is insufficient for a claim to survive summary judgment; the factual allegations must include: (1) being demonstrably injured by the handcuffs; or, (2) having had his complaints about pain ignored by officers. *See e.g. Dillman v. Tuolumne Cnty.*, No. 1:13-CV-00404 LJO, 2013 WL 1907379, at *8 (E.D. Cal. May 7, 2013).

Weldon's allegations plainly fit the pattern of insufficiencies in the exemplary case law. Weldon does not allege that he complained about tight handcuffs or pain at the time of the incident. Nor does he allege that he asked any officer to loosen his handcuffs, or that any police officer ignored such a request. Like Luong's complaints about an abrasion, Weldon vaguely complains that when Officer Conlee "twisted" his arms behind his back and placed his hands in handcuffs it was "brutish," it caused him pain in his joints, rotator sockets, elbows and wrists, and that as a result of the handcuffs he was "numb" and in pain for "several hours." But Weldon does not allege that he contemporaneously reported any pain or injury to an officer. Subsequently, Weldon fails to demonstrate that he suffered any actual injury. As in *Arpin*, Weldon does not present evidence, such as medical records, demonstrating injury. Indeed, Weldon does not suggest that he sought medical attention that day – or ever – due to the handcuffing procedure the officer used.

Absent allegations that a police officer ignored his complaint about tight handcuffs, or that he incurred actual injury, Weldon's vague and conclusory allegations, unsupported by evidence, are insufficient to support a constitutional claim that survives summary judgment. *Arpin*, 261 F.3d at 922 (citing *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)). There is no evidence that would permit a fact-finder to conclude that the officer applied an unreasonable amount of force under the circumstances. *See Graham,* 490 U.S. at 396 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." (citation and

21

quotation marks omitted)).  Judges must make "allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Graham,* 490 U.S. at 397.  Therefore, the answer to the first question under *Saucier* is "no."

The Court finds that, even if true, Weldon's allegations do not establish a constitutional violation.  The Court concludes that Weldon's allegations fail to raise genuine disputes of material fact as to whether the force used was unreasonable or that he sustained actual injuries.

### Prong Two: Whether Right Was Clearly Established

The second question a court must ask to determine if qualified immunity applies, is "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010) (quoting *Pearson*, 555 U.S. at 232).  If, in the course of the two-prong test, however, a court finds that the answer to the first question is "No," then the inquiry ends and the defense of qualified immunity applies. *Saucier,* 533 U.S. at 201

In the instant action, because the Court has determined, *supra*, that, even if true, Weldon's allegations do not establish a constitutional violation, the Court's inquiry stops and concludes that Officer Conlee is entitled to qualified immunity. *Saucier,* 533 U.S. at 201.

Accordingly, the Court will grant summary judgment in favor of the City Defendants on Plaintiff's excessive force claim.

### B.  Plaintiff's Due Process Claims under the Fifth and Fourteenth Amendments

Weldon apparently asserts a procedural due process claim by his argument that Defendants did not have a warrant or permission to tow his vehicle.  Yet, "procedural due process does not require pre-deprivation notice and a hearing before impoundments." *See City of Cornelius*, 429 F.3d at 867 (citing *Soffer v. City of Costa Mesa*, 798 F.2d 361, 363 (9th Cir. 1986) (finding no requirement for pre-deprivation notice because procedural burden is incompatible with legitimate purpose of immediate impoundment); *Goichman v. Rheuban Motors, Inc.*, 682 F.2d 1320, 1323-24 (9th Cir. 1982) (same); *Stypmann v. City and County of San Francisco*, 557 F.2d 1338, 1342 (9th Cir. 1977) (same).  Because the officer was clearly acting within his legitimate caretaking function, these cases control and Weldon's due process claim necessarily fails.  Moreover, courts have

rejected the proposition that the statutory impound scheme violates due process. *See e.g. Salazar v. Maywood*, 414 Fed.Appx. 73, 74-75 (9th Cir. 2011) (finding that the statute's notice provisions satisfy due process).  As there are no genuine issues of material fact, summary judgment on this claim is warranted.

## II.    STATE LAW CLAIMS

### A.  Assault and Battery

Under California law, Weldon's state law assault and battery claims are coextensive with his federal claim for excessive force.  Because Weldon fails to demonstrate that Officer Conlee used unreasonable force against him during an otherwise lawful arrest, these claims fail. *See Arpin*, 261 F.3d at 921-22 (citing *Saman v. Robbins,* 173 F.3d 1150, 1156-57, fn. 6 (9th Cir. 1999)). Weldon also cannot sustain a claim for battery unless he proves the unreasonable force caused him injury, damages, loss or harm. *Id.*  As set forth, *supra*, Weldon cannot show that Officer Conlee used unreasonable force or that such unreasonable force caused injury, damage, loss, or harm. Accordingly, the Court will grant summary judgment in favor of Defendants on Weldon's state law causes of action for assault and battery.

### B.  Conversion

Weldon claims that by towing away his van, the Towing Defendants' committed theft (or conversion).  The Towing Defendants argue that they cannot be liable for theft or conversion because they never wrongfully possessed Weldon's vehicle, rather they towed it at the apparently valid command of Officer Conlee, a City of Fresno Police Officer. *See Halajian v. D & B Towing*, 209 Cal. App. 4th 1 (2012); Cal. Veh. Code § 14602.6(a)(1) (West).

In *Halajian*, under facts similar to the instant case, a California appellate court found that a towing company's possession of a vehicle was only at the lawful instruction of a police officer, thus, there could be no liability for conversion. *Id.*  In other analogous cases, the Ninth Circuit has held that an owner of a towed vehicle does not have a state law conversion claim against a towing company because the automobile was properly towed. *See e.g. Scofield v. City of Hillsborough*, 862 F.2d 759, 766-67 (9th Cir. 1988).

Here, it is undisputed that the officer determined that Weldon was driving on a suspended license.  Pursuant to California Vehicle Code § 14602.6(a)(1), "[w]henever a peace officer determines that a person was driving a vehicle while his or her driving privilege was suspended . . . the peace officer may . . . cause the removal and seizure of that vehicle . . . ."  Therefore, this Court likewise concludes that because the towing company operated at the direction of a lawful command for impoundment, Weldon has no claim for conversion. *Id.*

Weldon counters with a subjective conclusion that because Officer Conlee was merely impersonating an officer at the time of the incident, his towing instructions were not lawful.  As evidence, Weldon suggests that Conlee failed to take an oath of office which comports with the California or United States constitution, an omission that somehow invalidates Conlee's status as a police officer, which, in turn, makes the towing activity a theft, and not a lawful impoundment.

The Court observes that in support of his legal conclusion, Weldon provides neither case law nor any reasonable basis for such a finding.  Even if Officer Conlee took the oath that Weldon suggests is deficient, such an oath has no impact on whether the Towing Defendants believed in good faith that they were following a valid police command.  Weldon's logic seems to be that, notwithstanding a reasonable belief to the contrary, his subjective opinion about Conlee's status as a police officer renders the Towing Defendants' belief about the validity of the police command irrelevant.  Not so.  Public policy and fairness militate finding that the Towing Defendants' belief that they acted in accordance with the law is, indeed, relevant. *Tarantino v. Syputo*, No. C 03-03450 MHP, 2006 WL 1530030, at *12 (N.D. Cal. June 2, 2006) *aff'd sub nom. Tarantino v. Syputa*, 270 F. App'x 675 (9th Cir. 2008) ("A contrary rule would not only be inequitable but would discourage cooperation with law enforcement agencies.") (quoting *Sokol v. Public Utilities Commission,* 65 Cal.2d 247, 257-58 (1966).

Weldon's factual assertions also undermine his argument.  By all accounts, Dodson and the other Towing Defendants acted at the request and direction of Conlee and the Fresno Police Department.  Under Weldon's facts, Conlee acted as a putative police officer because he: identified himself as a City of Fresno Police Officer; was driving a Fresno Police vehicle; was wearing a City of Fresno Police Department uniform; was equipped with handcuffs; effectuated Weldon's arrest;

24

and, that he requested and directed the tow activity with the cooperation of the Fresno Police Department.  Also, Weldon does not dispute that the towing company staff received the appropriate paperwork from the City of Fresno Police Department about the impoundment.  Thus, Dodson and the Towing Defendants had every reason to believe that Conlee was an actual police officer giving valid commands.  Under these facts, it is unquestionably reasonable for the Towing Defendants to have believed that the command to tow the vehicle came from a valid law enforcement agency. *See Tarantino*, 2006 WL 1530030, at \*12.  As in *Tarantino*, the Towing Defendants cannot be held liable for complying with an order that was valid upon its face, even if that order is later found to be unconstitutional. *Id.*  (finding that a towing company could not be found liable for conversion if complying with an order that was valid on its face, reasoning that the California Supreme Court found in similar circumstances that a telephone company could not be found liable "for complying with a mandatory order of the Public Utilities Commission valid upon its face, if that order is later found to be unconstitutional," because to hold otherwise would "impose upon the utility the investigative functions of a law enforcement agency and the decision-making duty of a judicial tribunal.") (quoting *Sokol*, 65 Cal.2d at 257).

Accordingly, this Court will grant the Towing Defendants' motion for summary judgment on Plaintiff's conversion claim.

## C.  Other State Law Claims

Plaintiff's FAC is, at best, puzzling because the various claims are lost in Plaintiff's ranting. The Court has done its best to liberally interpret the claims asserted.  To the extent Weldon asserts additional state law claims which the Court has not unearthed, the Court notes that having found it appropriate to grant summary judgment in favor of the Defendants on Plaintiff's federal claims over which the Court has original jurisdiction, and as the balance of pertinent factors[3] (judicial economy,

---

[3] *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.").

convenience, fairness, and comity) weigh against the exercise of supplemental jurisdiction in this case, the Court declines to exercise supplemental jurisdiction over any additional state law claims and **DISMISSES** such claims without prejudice pursuant to 28 U.S.C. § 1367(c). *See e.g. Deligiannis v. City of Anaheim*, No. SACV 06-720 DOC(JC), 2010 WL 1444538, at *13 (C.D. Cal. Mar. 2, 2010) *report and recommendation adopted*, No. SACV 06-720DOC(JC), 2010 WL 1444535 (C.D. Cal. Apr. 3, 2010) *aff'd*, 471 F. App'x 603 (9th Cir. 2012) (declining to exercise supplemental jurisdiction over a plaintiff's state law claims for conversion, when Court granted summary judgment in favor of City and Towing Defendants on federal claims related to towed vehicle) (citing *Acri v. Varian Associates, Inc. v. Varian Associates, Inc.,* 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) ("The Supreme Court has stated, and we have often repeated, that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'") (quoting *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)); *see also United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966) (if federal claims dismissed before trial, state claims should be dismissed as well); *McKinney v. Carey,* 311 F.3d 1198, 1201 n. 2 (9th Cir. 2002) (district court appropriately declined to exercise supplemental jurisdiction over state claims where federal claims dismissed)).

## III.    CONCLUSION AND ORDER

Summary judgment will be granted when "there is no genuine dispute as to any material fact." Fed. R. Civ. Pro. 56(a); *Liberty Lobby,* 477 U.S. at 248.  Defendants have met their initial burden of showing "an absence of evidence" supporting Plaintiff's case, and Plaintiff has failed to show with "specific facts" that there is a genuine issue of fact suitable for trial. *Celotex,* 477 U.S. at 325; *Anderson,* 477 U.S. at 250.  Accordingly,

**IT IS HEREBY ORDERED** that the Towing Defendants' Motion for Summary Judgment (Doc. 96), and the City Defendants' Motion for Summary Judgment (Doc. 97) are **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Paul Weldon's Motion for Summary Judgment (Doc. 139) is **DENIED**.

Consequently, The Magistrate Judge's findings and recommendations (Doc. 138) are

**DISMISSED AS MOOT**, as are the following pending motions: Plaintiff's Motions to "Stay Discovery Pending Determination of Pending Motions for Summary Judgment" (Docs. 132 & 145); Plaintiff's Motions for Reconsideration of the Court's previous order continuing the hearing on Defendants' motion to compel Plaintiff to submit to an independent medical examination (Docs. 135 & 141); and, Plaintiff's Motions to Stay Imposition of $715 Monetary Sanctions Pending Disposition of Motion to Reconsider (Docs. 133 & 143).

The Court acknowledges Plaintiff's history in this action of repeated violations of the Federal Rules, Local Rules, and court orders, as well as his vexatious conduct and unreasonable refusals to cooperate with the opposing parties. Such conduct has caused a significant waste of time and resources for the Defendants and the Court. Plaintiff has not complied with the Court's March 6, 2015 Order (Doc. 103), in which the Court ordered Plaintiff to cooperatively schedule and submit to a new deposition, and to respectfully participate in such a deposition. As of this date, Plaintiff has neither scheduled nor submitted to a further deposition, nor has he paid the $715.00 in monetary sanctions. The sanctions imposed by the Magistrate Judge stand.

IT IS SO ORDERED.

Dated: __**April 21, 2015**__         ___**/s/ Lawrence J. O'Neill**___
                                      UNITED STATES DISTRICT JUDGE